United States District Court
Southern District of Texas
**ENTERED**
November 02, 2018
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ERIC  DIMICK, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-9 |
| | § | |
| LORIE  DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner, Eric Dimick, is an inmate in the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID") and is currently incarcerated at the Robertson Unit in Abilene, Texas.   Petitioner, through counsel, filed this petition pursuant to 28 U.S.C. § 2254 on January 2, 2018 challenging his 2014 Nueces County conviction for aggravated kidnapping.  (D.E. 1).  On May 2, 2018, Respondent filed the pending Motion for Summary Judgment (D.E. 10) to which Petitioner responded on June 28, 2018.  (D.E. 14).[1]  This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b).   For the reasons stated below, the undersigned recommends Respondent's Motion for Summary Judgment be **GRANTED** and this action be **DISMISSED**.  It is further recommended that a Certificate of Appealability be **DENIED**.

---

[1] In future pleadings, Petitioner's counsel shall comply with the Court's January 9, 2018 Order and cite to the relevant docket entries.  (D.E. 3, Page 3).

## I.      JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241 and 2254.  A habeas action may be filed either in the district where petitioner is in custody or in the district in which petitioner was convicted. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).  Jurisdiction and venue are proper in this Court because Petitioner was convicted in Nueces County, Texas, which is within the Corpus Christi Division of the Southern District of Texas.  28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000); 28 U.S.C. § 124(b)(6).

## II.     BACKGROUND

### A.      FACTUAL BACKGROUND

The factual background of this case is summarized in Plaintiff's petition, Respondent's Motion for Summary Judgment and in the Court of Appeals for the Thirteenth District of Texas' ("state court") January 7, 2016 decision.  (D.E. 1, Pages 19-20; D.E. 10, Pages 3-5; and *Dimick v. State of Texas*, No. 13-14-426-CR, 2016 WL 105936, at *1 (Tex. App –Corpus Christi Jan. 7, 2016, pet. ref'd)).

In late December 2012, the 11-year-old female victim and her 13-year-old brother were walking their dog when Petitioner, age 17, jumped out of the back of a Suburban and grabbed her, covered her with a jacket, and attempted to return her to the vehicle. The victim resisted and as a result, Petitioner dropped her.  One of the other two male assailants in the vehicle then picked up the victim and shoved her into the vehicle.  The three men then tied up and blindfolded her and, after driving to an unlit portion of the

Padre Island beach access road, she was sexually assaulted by one of the other assailants. She was then released in the same area and was ultimately found after she jumped in front of an oncoming driver's pick-up truck screaming for him to stop, hysterical and wanting her mother.   At trial, Petitioner conceded he participated in the victim's abduction, was smoking synthetic marijuana both before and throughout the relevant time, and he had driven the vehicle at different times throughout the abduction and sexual assault.   Petitioner further testified he did not have any intent to sexually assault the victim or any intent to aid and abet her sexual assault committed by one of the other assailants.

### B.    PROCEDURAL BACKGROUND

Petitioner was charged with aggravated kidnapping and aggravated sexual assault of a child.  (D.E. 9-2, Pages 10-13).  On June 30, 2014, Petitioner was convicted by a jury of aggravated kidnapping and he received a sentence of 60 years confinement.  (D.E. 9-23, Page 5 and D.E. 9-24, Page 16).  The jury was unable to reach a verdict on the charge of aggravated sexual assault of a child.  (D.E. 9-23, Pages 8-19).

 Petitioner filed a direct appeal and the state court affirmed his conviction.  *Dimick v. State of Texas*, No. 13-14-426-CR, 2016 WL 105936 (Tex. App –Corpus Christi Jan. 7, 2016, pet. ref'd).  Petitioner filed a timely petition for discretionary review ("PDR") on March 9, 2016 with the Texas Court of Criminal Appeals ("CCA").  *Dimick v. State of Texas*, PDR No. 108-16 (Tex. Crim. App. Mar. 9, 2016); (D.E. 9-49).  On May 4, 2016, this petition was refused.  (D.E. 9-50).  Petitioner filed an application for state habeas relief on or June 29, 2017 which was denied without written order on December 6, 2017.

(D.E. 9-58).   Petitioner then filed the pending application for federal habeas relief on

January 2, 2018.  (D.E. 1).

## III.    ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996 ("AEDPA")  28 U.S.C. §2254

Federal habeas relief is available to a state prisoner only if he is being held in

violation of the Constitution, laws, or treaties of the United States. *Boyd v. Scott*, 45 F.3d

876, 881 (5th Cir. 1994) (per curiam) (citation omitted). Under AEDPA, a state prisoner

may not obtain relief with respect to any claim that was adjudicated on the merits in State

court proceedings unless the adjudication of the claim:

> (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United
> States; or

> (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)

Under the "contrary to" clause, a federal habeas court may grant the writ if the

state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on

a question of law or if the state court decides a case differently than the Court on a set of

materially indistinguishable facts.  Under the "unreasonable application" clause, a federal

habeas court may grant the writ if the state court identifies the correct governing legal

principle from the Court's decisions but unreasonably applies the principle to the facts of

the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Although

"unreasonable" is difficult to define, the Court noted it is an objective, rather than

subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001) (citing *Williams*, U.S. 362 at 412-413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A federal habeas court must determine what theories or arguments supported, or could have supported, that state court's decision. Then it must ask whether it is possible that fair minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Harrington*, 131 S. Ct. at 786. Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

The standard is very difficult to meet. "As amended by AEDPA, § 2254(d) stops short of the imposing a complete bar on federal court litigation of claims already rejected in state proceedings…It preserves authority to issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Id*. "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Id*. at 786-787. In addition, if a

decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).

A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id*. In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.[2]

## IV.   SUMMARY JUDGMENT

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show

---

[2]Relying on *Henderson v. Cockrell*, Petitioner asserts this Court "should owe no deference to the state courts determination of the claims" because "no substantive ruling on the merits has been made." 333 F.3d 592, 601 (5th Cir. 2003); (D.E. 14, Page 8). However, in *Henderson*, the state court misconstrued the petitioner's claims and therefore, while the petitioner properly presented his claim to the state court, the state court did not adjudicate the claim on its merits. 333 F.3d at 601. Here, the state habeas court denied relief without a written opinion, and in such a situation, the AEDPA standard of review applies. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (citations omitted). A denial without written order is an adjudication on the merits. *Barrientes v. Johnson*, 221 F.3d 741, 780 (5th Cir. 2000) (citations omitted).

with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000).

Rule 56 of the Federal Rules of Civil Procedure generally applies to federal habeas corpus cases. *Clark v. Johnson*, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted); *see also* Fed. R. Civ. P. 81(a)(4)("These rules apply to proceedings for habeas corpus...."). While summary judgment rules apply with equal force in a § 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, Section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke,* 542 U.S. 274 (2004).

## V.   PETITIONER'S GROUNDS FOR RELIEF

Petitioner raises the following grounds for relief: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) cumulative errors, including ineffective assistance of counsel and errors in the punishment charge, resulted in the overall denial of due process and (4) his sentence violates the Eighth Amendment. (D.E. 1). For the reasons discussed below, the undersigned recommends Petitioner's arguments are without merit.

## VI.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his first ground for relief, Petitioner asserts his trial counsel was ineffective during the punishment phase because he did not call Dr. Joy Alonzo to testify, failed to request a limiting instruction concerning the aggravated sexual assault charge or to object to the punishment charge allowing the jury consider evidence of the sexual assault and, lastly, failed to object to a defective punishment charge which did not contain a complete parole instruction.  Upon review of the record, the undersigned recommends Petitioner's trial counsel was not deficient under *Strickland* and Petitioner has therefore failed to make the required showing that the state court's rejection of his ineffective assistance of counsel claim was an unreasonable application of *Strickland*.

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*.  466 U.S. 668 (1984).  Petitioner must show counsel's performance fell below an objective standard of reasonableness and that deficient performance prejudiced the defense.  To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687-88.   Petitioner must prove he was prejudiced by his attorney's substandard performance, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*. at 687.  Petitioner then "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  "The

likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011) (citations omitted).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance while recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689. The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms." *Id.* at 690.

In addition, federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). Where the state court adjudicated an ineffective assistance claim on the merits, this Court must review petitioner's claim under both *Strickland* and § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions fell below *Strickland's* standard – it is

"whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 131 S. Ct. at 785.

### A.    TESTIMONY OF DR. JOY ALONZO

Petitioner first claims his trial counsel was ineffective by failing to present the testimony of Dr. Joy Alonzo, a doctor of pharmacology and toxicology, at the punishment phase, which he asserts would have led to the jury to significantly lessen his 60-year sentence because Dr. Alonzo's testimony "was material and relevant to [Petitioner]'s strategy in showing that his drug addiction was mitigating evidence for the jury to consider at punishment."  (D.E. 1, Pages 28-34; D.E. 9-20, Pages 38 and 64-65).

To prevail on a claim of ineffective assistance of counsel at sentencing, Petitioner must satisfy the two-prong *Strickland* standard, meaning he must demonstrate his defense counsel's conduct at sentencing was deficient and he was prejudiced as a result.  With respect to the prejudice prong, Petitioner must show a reasonable probability that, but for defense counsel's alleged errors, he would have received a significantly less harsh sentence. *Miller v. Dretke*, 420 F.3d 356, 366 (5th Cir. 2005); *Charles v. Thaler*, 629 F.3d 494, 499 (5th Cir. 2011).

Dr. Alonzo testified during the guilt phase of the trial and the state trial court found she was not qualified to testify as to the specific effects of Petitioner's synthetic marijuana use.  (D.E. 9-20, Pages 74, 78, 88-94).[3]  Dr. Alonzo was permitted to explain to the jury what synthetic marijuana is, its use, how it is sold and packaged, and its effects

---

[3]The state trial court concluded that "[S]he (Dr. Alonzo) can testify as to pharmacology and toxicology of the drug in general…As to this defendant, she cannot." (D.E. 9-20, Page 92).

in general, even after just one use, including that it is "designed in a lab to be 10 to 800 times more psychoactive than natural marijuana" and could cause users to suffer amnesia, to display aggression, to become paranoid and suffer from panic attacks, anxiety and hallucinations as well as to suffer from psychosis with symptoms similar to schizophrenia.  (D.E. 9-20, Pages 40-57, 93-96, 98-99 and 103).   Dr. Alonzo further testified users become addicted and "disaffective" meaning they are not able to make rational decisions or see themselves as responsible for their actions.  (D.E. 9-20, Pages 93-96 and 102).  She also testified synthetic marijuana use "takes a person away from the time and place that they're at" as "[t]hey want to disconnect from their current circumstances."  (D.E. 9-20, Page 94).

Also during the guilt phase of the trial, Dr. Traci Jordan, a clinical psychologist, testified she evaluated Petitioner once in 2009 and three times between 2013 and 2014. (D.E. 9-20, Pages 150, 152 and 164-165).   Dr. Jordan testified Petitioner was a "follower" who has "always been easily led."  (D.E. 9-20, Page 155).  Dr. Jordan further testified Petitioner was under the influence of drugs at the time of the kidnapping.  She opined Petitioner's "life was centered around obtaining, using and recovering from the use of illicit drugs.  And in between intoxication episodes, from history, he was often depressed and angry."  (D.E. 9-20, Page 158).  She also opined "there was no indication of sexually deviant preoccupation or aggressive impulses.   When he was under the influence, he was often angry and depressed and chronically irritable."  (D.E. 9-20, Page 159).  Dr. Jordan further testified Petitioner began to use marijuana excessively in 2009 which contributed to his depression and exacerbated his ADHD and "by 15, he was

violently out of control.  He was in full-blown addiction." (D.E. 9-20, Pages 162-163).

On cross examination, Dr. Jordan testified she had never seen Petitioner under the

influence of drugs or alcohol and had no opinion as to whether he knew right from wrong

when he was under the influence. (D.E. 9-20, Page 168).[4]

After Petitioner had been found guilty of aggravated kidnapping, during the

punishment phase, defense counsel again presented testimony from Dr. Jordan. (D.E. 9-

24, Page 52).  Dr. Jordan testified drugs could affect judgment, impulse, and perception

in adolescents more than in adults.   (D.E. 9-24, Pages 56-57).   She also testified

Petitioner suffered from low self-esteem, was easily led, and had a strong need to be

accepted which made him more likely to use drugs. (D.E.  9-24, Pages 58-59).   Dr.

Jordan further testified Petitioner was a heavy user of synthetic marijuana which had "an

extreme effect on his judgment" and, during the incident, Petitioner was suffering from

long term mental illnesses including ADHD, depression and addiction. (D.E. 9-24, Pages

61-63).  She opined long term substance abuse stunts an adolescent's emotional growth,

"interfering with perception, judgment, [and] impulse control." (D.E. 9-24, Page 63).  Dr.

Jordan also opined Petitioner was using synthetic marijuana at the time of the kidnapping

and was unable to appreciate the consequences of his actions.  (D.E. 9-24, Page 63).

Additionally, Petitioner's family members and friends testified as to Petitioner's drug

---

[4]Dr. Jordan was asked, "And would you agree with me that you really couldn't tell this jury
whether or not he knew right from wrong when he was under the influence of alcohol or drugs?"
to which she responded, "If I understand the question, I have already stated that I could not."
(D.E. 9-20, Page 168).

addiction, specifically synthetic marijuana, and its effect on Petitioner as well as his intention to remain sober in the future.  (D.E. 9-24, Pages 77, 83-84, 91 and 106).

The undersigned recommends Petitioner has failed to prove his trial counsel's conduct was deficient or he suffered prejudice.  Upon review of the testimony detailed above, it is clear the jury heard Dr. Alonzo's testimony during the guilt phase regarding synthetic marijuana and its effects in general.  Further, the jury also heard mitigating evidence related to Petitioner's use of synthetic marijuana through other witnesses throughout both the guilt and punishment phases, including Dr. Jordan.  Defense counsel also continuously presented evidence and argued for mitigation due to Petitioner's use of synthetic marijuana throughout the entire trial, up to and including closing argument.  (D.E. 9-24, Pages 125, 130-131 and 144-146).   Therefore, Petitioner has failed to establish a reasonable probability his sentence would have been significantly less harsh if Dr. Alonzo had testified again during the punishment phase.

Additionally, the Fifth Circuit has stated a "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Miller*, 420 F.3d at 361 (citation omitted).  During Petitioner's state habeas action, defense counsel averred "it was questionable whether Judge Longoria would allow [Dr. Alonzo] to give opinion testimony as an expert since she did not examine [Petitioner] at or near the time of the offense and was not a medical doctor."  (D.E. 9-65, Page 3).  Defense counsel also averred Dr. Alonzo, who lived in Dallas, Texas, could not remain for the duration of the trial and it would have been an extra expense to have

her return for the punishment hearing.  (D.E. 9-65, Pages 2-3).  He further averred the testimony of other witnesses during the trial, including Dr. Jordan and Petitioner himself, made it clear to the jury Petitioner was addicted to synthetic marijuana as well as its physical and mental effects.  (D.E. 9-65, Pages 3-4).  Therefore, defense counsel offered a reasonable tactical or strategic explanation for not calling Dr. Alonzo during the punishment phase and this explanation is entitled to substantial deference. *Strickland*, 466 U.S. at 689.  Petitioner has failed to overcome the "strong presumption" that counsel's decision in not calling a certain witness was a strategic one.  *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984).

### B.    EVIDENCE OF SEXUAL ASSAULT

As previously discussed, Petitioner was charged with aggravated kidnapping and aggravated sexual assault of a child.  (D.E. 9-2, Pages 10-13).  While Petitioner was convicted by a jury of aggravated kidnapping, the jury was unable to reach a verdict on the charge of aggravated sexual assault of a child.  (D.E. 9-23, Pages 5 and 8-19 and D.E. 9-24, Page 16).  Petitioner argues the aggravated sexual assault charge was therefore an extraneous offense.  (D.E. 1, Pages 34-36 and D.E. 14, Pages 11-13).

The Texas Code of Criminal Procedure also allows a jury to consider as punishment evidence any "extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act."  Tex. Code. Crim. Proc. art. 37.07 § 3(a)(1).  "[A]n extraneous offense is 'any act of misconduct, whether resulting in prosecution or not, that

is not shown in the charging papers.'"  *Lopez v. State*, 515 S.W.3d 547, 551-52 (Tex. App. — Houston [14th Dist.] 2017, pet. ref'd) (citations omitted).  If this evidence is offered, the trial court must include a reasonable doubt instruction.  *Lopez*, 515 S.W.3d at 551-52.  However, it is well established Texas law that "evidence of extraneous offenses that are indivisibly connected to the charged offense and necessary to the State's case in proving the charged offense may be admissible as relevant evidence to explain the context of the offense for which the defendant is on trial."  *Kucinski v. Thaler*, No. 08-cv-117, 2010 WL 668818, at *7 (N.D. Tex. Feb. 25, 2010) (citing *Lockhart v. State*, 847 S.W.2d 568, 571 (Tex. Crim. App. 1992) and Tex. R. Evid. 404(b)).  "Same-transaction contextual evidence 'imparts to the jury information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven.  Such evidence is admissible, without a reasonable-doubt instruction, to illuminate the nature of the crime alleged."  *Lopez*, 515 S.W.3d at 551-52 ("By its terms, section (3)(a)(1)'s reasonable-doubt standard applies only to extraneous offenses and does not apply to evidence that arises in the 'circumstances of the offense for which he is being tried.'") (citation omitted).

In two related grounds, Petitioner asserts his trial counsel was ineffective for failing to request a reasonable doubt instruction regarding the aggravated sexual assault charge, which he asserts became an extraneous offense, and for failing to object to the punishment charge allowing the jury to consider all evidence presented, including the evidence of sexual assault.  (D.E. 1, Pages 34-35 and D.E. 14, Pages 11-13).  Respondent asserts the jury's inability to reach a verdict on the aggravated sexual assault charge does

not transform it into an extraneous offense warranting a reasonable doubt instruction for sentencing purposes or preventing its consideration.   (D.E. 10, Pages 15-17).   The undersigned agrees.

In this case, Petitioner was on trial for both sexual assault and kidnapping which occurred as part of the same incident.   Therefore, the undersigned recommends the admission of evidence related to the sexual assault at the punishment phase without a limiting instruction was proper because the sexual assault was not extraneous and was clearly connected to Petitioner's kidnapping charge.  *Lopez*, 515 S.W. 3d at 552. ("[A] reasonable-doubt instruction is not required for 'same-transaction contextual evidence' admitted during the punishment phase.") (citations omitted).   Despite Petitioner's unsupported contention that the "kidnapping offense, which was not contested by [Petitioner], was completed prior to the extraneous crime of sexual assault…," the relevant facts show both offenses were part of a continuing criminal episode and were intricately intertwined. Therefore, the undersigned recommends Petitioner's argument is without merit.

### C.    PAROLE INSTRUCTION

Petitioner asserts the trial court was statutorily required to inform the jury he could earn good conduct time possibly leading to his early release, and his trial counsel failed to object to the omission of this language.  (D.E. 1, Page 36). Respondent argues since instruction of parole information and good conduct time would most likely encourage the jury to consider a heavier sentence, Petitioner was not prejudiced by its

omission. (D.E. 10, Page 17).[5] The undersigned agrees and recommends Petitioner has failed to demonstrate any prejudice by the omission. *Strickland*, 466 U.S. at 687.

For the reasons stated above, the undersigned respectfully recommends Petitioner's trial counsel was not ineffective. Accordingly, the undersigned further recommends the state habeas court's determination that trial counsel was not ineffective was not unreasonable or contrary to law and therefore, Petitioner's first ground for relief should be denied.

## VII.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his second ground for relief, Petitioner asserts his appellate counsel was ineffective for failing to raise on appeal the omission of the reasonable doubt instruction regarding the aggravated sexual assault charge at the punishment phase, as discussed above, as well as the omission of a voluntary intoxication mitigating instruction at the punishment phase.  (D.E. 1, Pages 47-52 and D.E. 14, Page 15).  Upon review of the record, the undersigned recommends these claims are without merit.

The two-prong *Strickland* standard applies to claims of ineffective assistance of appellate counsel, meaning Petitioner must demonstrate a deficiency of appellate counsel and that deficiency prejudiced his appeal.  *Strickland*, 466 U.S. at 687. Effective assistance of counsel does not mean appellate counsel must raise every nonfrivolous ground of appeal available.  *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998) (citations omitted).  Rather, as with trial counsel, appellate counsel must have performed

---

[5]The punishment charge did include parole guidance, but it did not discuss good conduct time. (D.E. 9-24, Pages 119-120).

in a reasonably effective manner.  *Id.*  To demonstrate prejudice, a petitioner must "show a reasonable probability that, but for his counsel's unreasonable failure …, he would have prevailed on his appeal."  *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001) (citation omitted).

### A.    EVIDENCE OF SEXUAL ASSAULT

Petitioner first asserts his appellate counsel was ineffective for failing to appeal the omission of a reasonable doubt instruction regarding the sexual assault.  For the reasons previously discussed, the undersigned recommends this allegation is without merit as the admission of evidence related to the sexual assault at the punishment phase without a limiting instruction was proper because the sexual assault was not extraneous and was clearly connected to Petitioner's kidnapping charge as same transaction contextual evidence.  Therefore, Petitioner has presented no evidence that appellate counsel's challenge would have been successful and therefore, Petitioner has not demonstrated appellate counsel's performance was deficient or any resulting prejudice under *Strickland*.

### B.    VOLUNTARY INTOXICATION MITIGATING INSTRUCTION

Petitioner also alleges his appellate counsel failed to challenge the lack of a mitigating instruction on voluntary intoxication during punishment. (D.E. 1, Pages 49-51 and D.E. 14, Page 15).[6]  Petitioner asserts the entire theme of his defense was his

---

[6]Texas Penal Code § 8.04 states that while voluntary intoxication is not a defense to the commission of a crime, "[w]hen temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in

addiction to synthetic marijuana and "[w]ithout this instruction on intoxication in the punishment charge the jury was free to disregard this evidence and effectively nullify [his] entire mitigation case." (D.E. 1, Page 51).

Upon review of the record, it is clear Petitioner's trial counsel requested an instruction on voluntary intoxication, which the trial court denied instead permitting trial counsel to raise the issue in his closing. (D.E. 9-24, Pages 111-114). Petitioner's trial counsel then began his closing by explaining to the jury they could consider voluntary intoxication when assessing the punishment. (D.E. 9-24, Page 125). Trial counsel stated:

> Ladies and gentlemen of the jury, we are back again to decide the punishment in this particular case. I want to talk to you first for a few minutes about a couple of words that we dealt with, they are not real clear in the charge, if you remember the charge on guilt-innocence phase of the trial, we talked about intoxication not being a defense to a crime. Well, generally in the punishment phase, intoxication, again, is not a defense, that means it is not an excuse for committing a crime, but it can be used by you folks to consider what the appropriate punishment is.

> You may consider it, say, well, because of his intoxication, I feel like he played a lesser role and therefore, I'm going to reduce the punishment and I'm going to take that into consideration. You don't have to do that, if you choose not to. If you feel like, well, I'm not going to give him any consideration because he was intoxicated, that's your choice to make.

(D.E. 9-24, Pages 124-125).

Petitioner's trial counsel later argued:

I think when I first started arguing with you folks, we were talking about the word "intoxication" and how you can use the word "intoxication." The law is pretty clear cut, intoxication is not a defense, it's not an excuse, but it

---

accordance with the provisions of this section." Intoxication is defined as a "disturbance of mental or physical capacity resulting from the introduction of any substance into the body."

can be used for mitigating punishment.  Mitigation just means to lessen.
What you have to do is you have to look at the role of the parties, if there is
more than one person, look at their roles in deciding whether intoxication
had anything to do with it.

(D.E. 9-24, Pages 130-131).

Petitioner's trial counsel further argued:

Mr. Botary told you a little bit about mitigation.  He was talking in the
context of voluntarily being intoxicated.  I think there's no question Eric
had a drug problem.  There's no question that on the night of this offense he
was intoxicated.  He was very intoxicated.  We heard some testimony about
this stuff they call synthetic marijuana, I don't know if any of you have
family members or friends who have fallen to synthetic marijuana, but what
I learned, and what I have heard during the course of this trial is this stuff is
the devil's own potion.  You can have heart attacks.  You can have kidney
failure.  You can go psychotic from one session of using this stuff.  I think
Dr. Alonzo told us a case study.  There was a midshipman in the naval
academy who used it once a couple of years ago and he's still locked up in
a mental health facility; one use.  We know that's not the case here.  We
know that Eric used this stuff daily, he used it over and over again.  Again,
it's not a defense, and rightly so he's been convicted.  He told you he
kidnapped this little girl and he's been convicted of kidnapping this little
girl.  No one is asking you to give him a free ride because of his drug
problem.

You can, however, use the facts of his intoxication, the extent of his
intoxication, as a mitigating factor.  In other words, did the use of this drug
impair his judgment at some point or to some degree to where the person
who committed this crime wasn't the real Eric Dimick or wasn't the Eric
Dimick who may have some potential in the future?  And I submit to you
that the drug use plays a very important role in that.  The experts will tell
you, they did tell you, that this substance impairs judgment, it impairs your
ability to see the consequences of your actions.  I think when you combine
that with a 17-year-old young man or child or teenager, whatever you want
to call him, you run a very low risk of ending up in a courtroom like this.

So, where does that leave us?  That leaves you guys with a very tough
decision.  I'm sure the prosecutor will be asking you for a life sentence or
decades and decades of imprisonment.  I submit to you that that's probably
appropriate punishment for Jacob Musich given his role.  But Eric Dimick's
role is very, very different, and I ask respectfully that you consider that.

(D.E. 9-24, Pages 145-146).

As previously discussed, the jury heard ample testimony regarding Petitioner's drug use and its effects, including during the incident at issue.  They were then informed several times that it was a mitigating factor when assessing punishment by Petitioner's trial counsel in closing.   As such, it was not objectively unreasonable for appellate counsel to conclude against bringing this claim on appeal. *Green*, 160 F.3d at 1043 (Appellate counsel need not raise every nonfrivolous ground of appeal available). Petitioner provides no evidence that but for the counsel's failure to bring this claim, there is a reasonable probability he would have prevailed on appeal.

For the reasons stated above, the undersigned recommends Petitioner's appellate counsel was not deficient under *Strickland* and Petitioner has therefore failed to make the required showing that the state court's rejection of his ineffective assistance of appellate counsel claim was an unreasonable application of *Strickland*.

## VIII.  CUMULATIVE ERROR

Petitioner argues the cumulative effect of the errors addressed above, namely ineffective assistance of counsel and punishment charge error, resulted in an unfair trial at the punishment phase.  (D.E. 1, Pages 52-56 and D.E. 14, Pages 16-17). However, the cumulative error doctrine rarely applies and while the doctrine is often invoked, it is practically never found persuasive. *U.S. v. Delgado*, 672 F.3d 320, 344 (5th Cir. 2012) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1456 (5th Cir. 1992). It is only appropriate

when errors "so fatally infect the trial that they violated the trial's fundamental fairness." *Id*. (quoting *U.S. v. Fields*, 483 F.3d 313, 362 (5th Cir. 2007)).

Additionally, "federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process." *Derden,* 978 F.2d at 1454 (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)); *see also Coble v. Quarterman,* 496 F.3d 430, 440 (5th Cir. 2007). Errors that did not occur or were not prejudicial can have no cumulative effect, regardless of the number raised. *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996).

The undersigned recommends Petitioner's claims, as outlined above, are lacking in merit and therefore, can have no cumulative effect. Petitioner has not shown error infected the punishment phase with fundamental unfairness or that the state court's denial of relief was unreasonable.[7] Absent this showing, Petitioner does not demonstrate the state court's decision to deny relief was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.

---

[7]Even assuming the failure to include a mitigation instruction regarding voluntary intoxication was an error in the punishment charge, the undersigned recommends it was harmless given the argument and instructions by Petitioner's trial counsel as discussed above. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (An error is deemed harmless unless petitioner can show it had a substantial and injurious effect or influence in determining the jury's verdict) (citation omitted).

## IX.   EIGHTH AMENDMENT CLAIMS

In his last ground for relief, Petitioner asserts his sixty-year sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment.  (D.E. 1, Pages 56-57 and D.E. 14, Pages 17-19).   Petitioner argues he turned 17 two months before he committed the offense and his 60-year sentence is equivalent to a life sentence in prison for a non-capital crime.  (D.E. 1, Page 57 and D.E. 14, Pages 18-19).   However, Petitioner did not properly preserve this argument for review because he did not raise it before the trial court at the time his sentence was imposed or in a motion for a new trial. *Dimick*, 2016 WL 105936, at *9 (citations omitted).[8]   Accordingly, the undersigned recommends this claim is procedurally barred from review by this Court because he failed to preserve this alleged error at the state court level.

The general rule is a federal habeas court will not consider a claim that the last state court rejected on the basis of an adequate and independent state procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).  To produce a federal cognizable default, the state procedural rule "must have been 'firmly established and regularly followed' by the time it is to be applied. *Ford v. Georgia*, 498 U.S. 411, 424 (1991); *see also Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).  There is no dispute that it is well established under Texas law that

---

[8]The state habeas court denied relief without a written opinion which is considered to be an adjudication on the merits.  *Barrientes*, 221 F.3d at 780.  In addition, if a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision which, in this case, is the state appellate court decision.  *Bledsue*, 188 F.3d at 256.  Accordingly, Petitioner's argument that the state habeas court did not express rely upon a procedural bar is without merit.

errors pertaining to sentence or punishment must be contemporaneously objected to before the trial court. *Styron v. Johnson*, 262 F.3d 438, 454-54 (5th Cir. 2001) (citation omitted); *Amos v. Scott*, 61 F.3d 333, 341 (5th Cir. 1995) ("Texas courts apply the contemporaneous objection rule strictly and regularly").

Petitioner argues this Eighth Amendment claim is not barred because his claim, while found not to be preserved for review, was alternatively considered on the merits and his sentence was found not to be in violation of the Eighth Amendment because it fell within the legislatively prescribed punishment range. (D.E. 14, Page 17-18).[9] However, while the merits of the claim were discussed in the alternative, this does not negate the state court's finding on the procedural bar. *See Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005) ("[W]hen a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' and 'prejudice' deny habeas relief because of the procedural default.") (citation omitted); *Amos*, 61 F.3d at 341 ("[W]hen the TCCA holds that a criminal defendant's federal claim is procedurally barred, then proceeds to address the merits of the defaulted claim and voice a second holding, the opinion is properly viewed as stating an alternative holding. Only if the TCCA should clearly and unequivocally excuse the procedural default will we view the opinion as one decided on the merits only.")

---

[9]Appellant's complaint about the alleged disproportionality of his sentence was not raised at the time it was imposed or in a motion for new trial. Therefore, he preserved nothing for our review. However, even if we were to reach the merits of his complaint, appellant acknowledges that the punishment imposed is within the statutory limits and is generally not subject to challenge for excessiveness. A first-degree felony is punishable by a term of imprisonment for life or for any term of not more than ninety-nine years or less than five years." *Dimick*, 2016 WL 105936, at *9. (D.E. 9-52, Page 21) (citations omitted).

A procedural default may be excused if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  In this case, a miscarriage of justice would mean Petitioner is actually innocent of the crime for which he was convicted, which he readily admits he is not.  *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citations omitted); *Konemany v. Stephens*, No. H-13-2309, 2013 WL 6858506, at *3 (S.D. Tex. Dec. 30, 2013) ("By 'fundamental miscarriage of justice' is meant that he was actually innocent of the crime.") (citations omitted).

Therefore, it is recommended that Petitioner's claim for an Eighth Amendment violation is procedurally defaulted.  Further, it is respectfully recommended Petitioner fails to argue, much less demonstrate, cause for his procedural default nor does he establish actual prejudice or a fundamental miscarriage of justice and as such, this claim is barred from consideration by this Court.

## X.     EVIDENTIARY HEARING

Petitioner requests an evidentiary hearing to challenge the credibility of trial counsel's claims regarding his strategy.  (D.E. 14, Page 19).  Petitioner asserts the factual basis of his ineffective assistance of counsel claims was not fully developed because the state habeas court did not conduct an evidentiary hearing or otherwise resolve contested issue of fact.  (D.E. 14, Page 20).  Petitioner maintains he should have been granted an evidentiary hearing in the state court to resolve alleged conflicts between counsel's explanations of his trial conduct in his affidavit and the trial record.  (D.E. 14, Page 20).

However, even assuming he is not barred from obtaining an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2),[10] Petitioner is not entitled to an evidentiary hearing in federal court unless the state did not provide him with a full and fair hearing and, if proven true, his allegations would entitle him to relief. *Murphy v. Johnson*, 205 F.3d 809, 816 (5th Cir. 2000). A "full and fair" hearing in the state courts does not necessarily require live testimony. *Id.*; *Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000). Additionally, a district court does not abuse its discretion in denying an evidentiary hearing even when no factual findings were made by the state court. *Murphy*, 205 F.3d at 816 (citation omitted). If a district court has sufficient facts to "make an informed decision regarding the merits of a claim," it may properly deny the petitioner an evidentiary hearing. *Id.* at 816.

For the reasons stated above, the record contains sufficient facts to make an informed decision on the merits of the claim and accordingly, the undersigned

---

[10] If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on-

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

recommends the Court not exercise its discretion to order an evidentiary hearing in this matter.

## XI.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).   Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability ("COA").   A District Court ruling on a petitioner's relief may *sua sponte* rule on a COA because it "is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.   Further briefing and argument on the very issues the court has just rule on would be repetitious."   *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(per curiam).

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."   *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).   As to claims the Court rejects solely on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   As to claims the Court rejects solely on procedural grounds, the Petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. (emphasis added)

In Petitioner's case, reasonable jurists could not debate the dismissal or denial of the Petitioner's §2254 petition on substantive or procedural grounds, nor find that the issues are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327. Accordingly, it is respectfully recommended the Court not issue a certificate of appealability.

## XII.   RECOMMENDATION

For the reasons stated above, it is respectfully recommended that Respondent's Motion for Summary Judgment (D.E. 10) be **GRANTED** and Petitioner's application for habeas corpus relief be **DISMISSED**.   It is further recommended that a Certificate of Appealability be **DENIED**.

ORDERED this 1st day of November, 2018.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).